**In the Matter of UNITED IMPORTS, INC., Debtor.**

**Bankruptcy No. BK96–81674.**

United States Bankruptcy Court, D. Nebraska.

Oct. 30, 1996.

James Cavanagh and Sandra Dougherty, Omaha, NE, for Debtor.

Sam King, Omaha, NE, for U.S. Trustee.

Paula Wilson, for Heartland.

Robert Bothe and Matthew McGrory, Omaha, NE, for Time Warner Cable of New York City.

*MEMORANDUM*

TIMOTHY J. MAHONEY, Chief Judge.

Hearing was held on Motion for Relief by Time Warner on September 9, 1996. This memorandum contains findings of fact and conclusions of law required by Fed.Bankr.R. 7052 and Fed.R.Civ.P. 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(G)

## Background

Time Warner Cable of New York City (Time Warner) filed its motion for relief from the automatic stay on August 9, 1996 to continue its lawsuit against the debtor in the Eastern District of New York. (Filing # 17). Resistances to Time Warner's motion have been filed by the debtor (filing # 62), the Official Creditor's Committee (filing # 91), Samsung Electro–Mechanics (filing # 82), and Heartland Printing & Equipment (filing # 64). A hearing on the motion was held on September 9, 1996. Subsequently, Time Warner waived the thirty-day requirement for a decision for the bankruptcy court, and this waiver was accepted in an order dated October 7, 1996.

In the litigation that was stayed by the filing of the debtor's petition, Time Warner alleges that the debtor has violated 47 U.S.C. §§ 553 and 605 and New York Public Service Law § 225.6 by selling and distributing cable television descrambling equipment which Time Warner maintains is used to steal its cable signals. In its complaint, Time Warner has requested the following relief:

(1) Declare that defendants' unauthorized manufacturing, distribution, modification and sale of equipment designed to decode encrypted cable television signals violated Title 47, sections 553 and/or 605, and that such violations were committed willfully and for purposes of direct or indirect commercial advantage or private financial gain;

(2) In accordance with Title 47, section 605(e)(3)(B)(i) and section 553(c)(2)(A), enjoin defendants ... from the further sale, modification, distribution or advertising of electronic equipment designed for unauthorized interception of cable television programming services;

(3) In accordance with Title 47, sections 605(e)(3)(B)(ii) and 605(e)(3)(C) award the plaintiff:

(a) the actual damages which the plaintiff has suffered, together with any additional profits earned by the defendants, as a result of the defendants' unauthorized sales of prohibited electronic equipment; or, alternatively at plaintiff's election;

(b) statutory damages in the amount of $200,000 for each violation of Title 47, section 605 and section 553 by defendants;

(4) In accordance with 47 U.S.C. section 605(e)(3)(C)(i)(I) and section 553(c)(3)(A)(i), order an accounting of all profits and expenses realized by the defendants in connection with their violation of the foregoing statutes;

(5) In accordance with the equitable remedy of constructive trust, order that the full value of services converted by virtue of the defendants' descrambler sales operations be ordered returned by the defendants to plaintiff;

(6) In accordance with 47 U.S.C. §§ 553 and 605, direct defendants to pay plaintiff all of plaintiff's costs, including reasonable attorney's fees and investigative fees; and

(7) Grant such other and further relief as is just.

(Exhibit 3, Attachment 1).

The suit against the debtor was commenced by Time Warner on July 10, 1996. On that date, Judge Treger entered an ex parte Temporary Restraining Order that froze the debtor's assets and prohibited it from selling the decoder devices. (Exhibit 3, Attachment 5). This was followed by a preliminary injunction order entered either on July 25, 1996 or August 5, 1996.[1] This order

---

1. There apparently is some question as to when the preliminary injunction order was entered. Time Warner maintains that the order was entered on July 25, 1996. The debtor counters that it was entered on August 5, 1996, after it had filed its petition in bankruptcy. The order is dated August 5, 1996, and refers to the fact that the debtor was in bankruptcy. However, Judge Treger, in a subsequent order, indicated that it was entered on July 25, 1996. The date on

prevented the debtor from doing any of the following:

1. enjoined the debtor from selling, transporting, transferring, relocating or advertising and/or offering for sale, modification, manufacture or distribution of cable television non-addressable decoding devices and related equipment;

2. Required the debtor to permit inspection of its stock of decoding devices by the plaintiff at its premises, up to two times per business week;

3. Enjoined the debtor from further advertising its sales of decoding devices, and required the debtor to take steps to curtail the future appearance of such advertisements for which it had previously contracted;

4. Enjoined the debtor from destroying certain business records;

5. Enjoined Joseph Abboud from transferring, removing, encumbering or permitting the withdrawal of any assets or property, presently or formerly belonging to him, whether real or personal;

6. Required the First National Bank of Omaha to comply with a subpoena previously served upon it which sought production of documents reflecting the banking records of the debtor;

7. Required that the debtor continue to provide Time Warner with an accounting listing the total number of sales and purchases of decoders from July 10, 1996 to the present;

8. Required the debtor to provide Time Warner with information contained in documents sent to it by Time Warner;

9. Required the debtor to provide to Time Warner copies of its books and records.

(Exhibit 3, Attachment 8).

A hearing was then held in the bankruptcy court on the debtor's emergency motion to stay the effect of the preliminary injunction. On August 19, 1996, an order was entered by this court finding that the automatic stay of

which the order was entered is not, however, pertinent to the present motion and is not an

11 U.S.C. § 362(a) stayed the affirmative discovery obligations of the injunction.

On August 21, 1996, a hearing was held in New York regarding the effect of the bankruptcy on the previous injunction entered by that court. (Exhibit 3, Attachment 10). The New York court entered an order the following day which provided that a portion of the injunction ordering the debtor to perform an affirmative discovery obligation was not stayed by the bankruptcy filing. The portion of the order held not to be stayed is as follows:

Ordered that defendants shall, within thirty (30) days, provide to the plaintiff the information contained in the documents sent by them to the plaintiff on July 24, 1996 and admitted during the July 25, 1996 hearing as Plaintiff's Exhibit "14B," in a format which will permit ready determination of the number of sales and returns of decoding devices made by defendants to customers in TWCNYC's franchise area during the period from July 10, 1993 to July 10, 1996, and shall within 60 days, also provide, in a similar format, the identical information for the period July 10, 1990 to July 9, 1993, as previously ordered by the Court and with respect to which defendants have not yet complied and have represented to the Court will require additional time for compliance.

(Exhibit 4, Attachment D).

The debtor appealed the New York court's orders of July 25/August 5 and August 22 to the Second Circuit and requested a stay pending appeal. Judge Treger denied the motion on September 9, 1996. (Exhibit 8, Attachment 1). However, the Second Circuit Court of Appeals did grant a stay of the orders pending oral argument of the appeal.

On September 30, 1996, the debtor and the debtor's president plead guilty to felonies in the Northern District of Georgia. (Supplemental Exhibit). Although the conduct for which the guilty pleas were entered is not the actual conduct which is the basis for the New York litigation between Time Warner

issue before the court.

and the debtor, the conduct is of a similar nature.

### Decision

Because Time Warner has not yet filed a claim in bankruptcy and, through its lawsuit, is seeking to impose a constructive trust on assets that are currently property of the bankruptcy estate, Time Warner's motion for relief from the stay to continue the New York litigation must be denied.

### Discussion

Time Warner seeks relief from the automatic stay pursuant to § 362(d)(1) of the Bankruptcy Code to continue its litigation against the debtor in New York. That section provides as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, modifying, or conditioning such stay—
>
> (1) for cause . . .

11 U.S.C. § 362(d)(1).

### I. *Continuation of the New York Litigation*

Although cause is not defined in the Code, Congress did intend that the automatic stay be lifted to allow litigation involving the debtor to continue in nonbankruptcy forums under certain circumstances. See, H.R.Rep. No. 595, 95th Cong., 1st Sess. 341 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 50 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5836, 6297 ("[I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere.") " 'Cause' for granting relief from the stay may exist if the equities in a particular case dictate that a lawsuit . . . should proceed in a forum other than the bankruptcy court for the purpose of liquidating the claim on which the lawsuit is premised." *In re Marvin Johnson's Auto Service, Inc.,* 192 B.R. 1008 (Bankr.N.D.Ala.1996). In determining whether cause exists, the bankruptcy court must balance the potential hardship that will be incurred by the party seeking relief if the stay is not lifted against the potential prejudice to the debtor and the bankruptcy estate. *Internal Revenue Service v. Robinson (In re Robinson )*, 169 B.R. 356 (E.D.Va.1994).

There are two cases that are primarily relied upon by other courts which provide a number of factors a court should consider in balancing the equities of the case to determine whether cause exists. The first is *In re Curtis,* 40 B.R. 795 (Bankr.D.Utah 1984). The court in *Curtis* stated that the factors to be considered in making a determination of whether or not to grant relief from the stay for cause are as follows:

(1) Whether the relief will result in a partial or complete resolution of the issues.

(2) The lack of any connection with or interference with the bankruptcy case.

(3) Whether the foreign proceeding involves the debtor as a fiduciary.

(4) Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases.

(5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation.

(6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question.

(7) Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties.

(8) Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c).

(9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f).

(10) The interest of judicial economy and the expeditious and economical determination of litigation for the parties.

(11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial.

(12) The impact of the stay on the parties and the "balance of hurt."

*Id.* at 799–800 (citations omitted).

The second case is *In re Johnson*, 115 B.R. 634 (Bankr.D.Minn.1989). In that case the court held that the relevant factors to consider in determining whether relief from the stay should be granted so that a creditor could continue pending litigation against the debtor include the following:

1. Whether insurance coverage with a duty of defense is available to the debtor or the estate, or, conversely, whether the conduct of the defense will impose a financial burden on the debtor or the estate;

2. Whether judicial economy favors the continuation of the action in the tribunal in which it was commenced, to fix and liquidate the claim which then may be made against the debtor's estate;

3. Whether the ... litigation has progressed to trial readiness, with the likelihood that investment of resources in trial preparation would be wasted if trial were deferred;

4. Whether the issues presented are governed solely by state law, or should be adjudicated by a specialized tribunal with expertise in their subject matter;

5. Whether the litigation involves other parties over whom the Bankruptcy Court lacks jurisdiction, and whether full relief may be accorded to all such nondebtor parties without the debtor's presence in the lawsuit;

6. Whether the creditor has a probability of success on the merits;

7. [W]hether the interests of the debtor and the estate would be better served by the resolution of threshold bankruptcy-law issues in the Bankruptcy Court before the court and the parties address the issue of the forum where the claim against the debtor is to be fixed and liquidated.

*Id.* at 636 (citations omitted). See, *Smith v. Tricare Rehabilitation Sys., Inc. (In re Tricare Rehabilitation Sys., Inc.)*, 181 B.R. 569 (Bankr.N.D.Ala.1994) (Comparing the factors listed in the two cases).

■ Upon examination of the factors listed in the two cases, it appears that the relevant factors to consider are (1) judicial economy; (2) trial readiness; (3) the resolution of preliminary bankruptcy issues; (4) the creditor's chance of success on the merits; (5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors.

### 1. *Judicial Economy*

■ "Principles of judicial economy require that, without good reason, judicial resources should not be spent by duplicitous litigation, and that a lawsuit should only be tried once, that is if one forum with jurisdiction over all parties is available to dispose of all issues relating to the lawsuit." *In re Marvin Johnson's Auto Service, Inc.*, 192 B.R. at 1015. Although the case had only been pending in the Eastern District of New York a few weeks before the bankruptcy was filed, this factor favors granting Time Warner's motion. The Eastern District of New York has jurisdiction over all of the parties in that litigation. This court, however, does not have jurisdiction over Joseph Abboud, the debtor's president, in his personal capacity, and Abboud is a defendant in the litigation.

### 2. *Trial Readiness*

This case is not ready for trial. Specifically, not a single deposition has been taken, nor have interrogatories been served, nor have any documents been produced, apart from those required to be provided to Time Warner pursuant to the preliminary injunction. (Time Warner has maintained that such documents were not a means of discovery, but rather a device to insure compliance with the injunction). There is insufficient evidence to determine when exactly the parties would be prepared to go to trial, or even reach a stage where a summary judgment motion could be filed. However, it is apparent that it is some time in the distant future. This factor does not favor granting Time Warner's motion.

### 3. *The Resolution of Preliminary Bankruptcy Issues*

There are two preliminary bankruptcy issues that require resolution before relief

from the stay should be granted. The first involves a declaratory judgment action filed by the debtor against Time Warner. On July 15, 1996, the debtor filed suit in the District of Nebraska naming Time Warner as a defendant. (Exhibit 4, Attachment H). The case, originally assigned to Judge Shanahan, was referred to the bankruptcy court by an order dated August 27, 1996, and is now an adversary proceeding. (Case No. A96–8098). Time Warner filed a motion to withdraw the reference on August 9, 1996 (filing # 2), and a motion to stay or dismiss the case on September 4, 1996 (filing # 6). The debtor has resisted both motions (filing # 4 and # 15), and a hearing on both motions is scheduled on October 31, 1996.

The declaratory judgment action that was filed by the debtor in the District of Nebraska, though not involving the same parties as the New York litigation (Abboud is not a party to the declaratory judgment action), does involve the same conduct and issues. Until the hearing has been held and the bankruptcy court has issued a decision and recommendation, granting the motion for relief would be inappropriate. Whether or not the reference was withdrawn, if the motion to dismiss or stay were overruled, the debtor would then have to prosecute a lawsuit in Nebraska and defend a lawsuit in New York that involved the exact same issues, resulting in duplicity of litigation.

The second issue is the fact that Time Warner has yet to file a proof of claim in the bankruptcy.[2] It may be that Time Warner's filing of it motion for relief is enough to constitute an informal proof of claim, but that issue is not presently before the court. As it stands right now, Time Warner is not eligible to share in the distribution of any estate assets. It therefore does not stand to reason that the debtor should be forced to defend a lawsuit in which any monetary judgment obtained in the suit could not be enforced against assets of the estate. *Benedor Corp. v. Conejo Enter., Inc. (In re Conejo Enter., Inc.)*, 96 F.3d 346, 352–53 (9th Cir.1996) ("[S]taying the state action gave the bankruptcy court and the other parties time to see whether [the movant] would file a proof

of claim before the upcoming claims bar date, or effectively waive its right to payment from the bankruptcy estate ... It would be absurd to allow the state action to go ahead and require the estate to spend money litigating a debt that might ultimately be uncollectible. Thus, the bankruptcy court's 'wait and see' approach was both reasonable and appropriate."); *Wright v. Placid Oil Co.*, 107 B.R. 104, 108 (N.D.Tex.1989) ("[T]he bankruptcy court did not abuse its discretion in denying the motion to lift the stay because, as the bankruptcy court pointed out, it would serve no purpose in allowing the state court litigation to go forward since no proof of claim can be filed in bankruptcy court [because the proof of claim was not filed by the bar date]."); *Fedders North America, Inc. v. Branded Products, Inc. (In re Branded Products, Inc.)*, 154 B.R. 936, 952 (Bankr. W.D.Tex.1993) ("[The movant] has not filed a claim in this bankruptcy case. Therefore, [the movant] is not currently entitled to share in any distribution of assets of this estate. The automatic stay protects the estate from efforts to collect on claims outside the bankruptcy process and no reason has been presented why [the movant] should be granted any exception from the protection. It is merely one more creditor trying to recover from the limited assets of a bankruptcy estate, and its claim has no greater dignity than that of any other unsecured creditor of the estate.").

Until these two issues are resolved, this particular factor weighs against granting Time Warner's motion.

### 4. The Creditor's Chance of Success on the Merits

This factor weighs in favor of granting the motion. Judge Treger granted Time Warner an ex parte temporary restraining order which froze the debtor's assets and, following a hearing, granted Time Warner a preliminary injunction which prohibited the debtor from selling the converter boxes that are the subject of the lawsuit. In addition, pursuant to local rule in the Eastern District of New York, the New York litigation is a related

**2.** The bar date for filing a proof of claim in this

case is December 4, 1996. (Filing # 18).

case to *Time Warner Cable of New York City v. U.S. Cable T.V., Inc., et al.,* a case previously decided by Judge Treger in which Time Warner was successful.

### 5. The Cost of Defense or Other Potential Burden to the Bankruptcy Estate and the Impact of the Litigation on Other Creditors

██ Counsel for the debtor has stated that attorney's fees in defending the New York litigation would exceed $300,000. (Exhibits 5 and 6). However, "[t]he cost of defense is, standing alone, ordinarily considered an insufficient basis for denying relief from the stay." *Tricare,* 181 B.R. at 575. If Time Warner's claim is to be liquidated, the suit will have to be defended, and the debtor will have to expend monies defending it either in New York or Nebraska. Judge Treger did order that the debtor was required to post a $1,000,000 bond, but he agreed that that portion of his order was stayed because of the bankruptcy filing.

However, great prejudice to the bankruptcy estate and the other creditors of the debtor could result from the type of relief requested in the New York litigation by Time Warner. Specifically, Time Warner has requested a constructive trust be placed on the assets of the debtor. Those assets are currently property of the bankruptcy estate, and the bankruptcy estate could be greatly prejudiced if a constructive trust was placed on the property of the estate. A constructive trust would also reduce the amount of property that could be distributed to other creditors under a plan of reorganization or a liquidation of assets.

Time Warner has expressed a willingness to forgo enforcement of a constructive trust outside of the bankruptcy court should a constructive trust be imposed by the Eastern District of New York and to share the proceeds of a constructive trust on a pro-rata basis with the other creditors of the debtor. However, it is questionable whether Time Warner's willingness to forgo enforcement of a constructive trust outside of bankruptcy court would be enforceable if the Eastern District of New York imposed one. Cf., *Celotex Corp. v. Edwards,* ── U.S. ──, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (Collateral attack of federal court's order in another federal court was improper; the proper procedure was to appeal the order complained of to the proper court within the district or circuit where the order was made); *Goetzman v. Agribank, FCB (In re Goetzman ),* 91 F.3d 1173, 1177 (8th Cir.1996) ("[L]ower federal courts lack jurisdiction to engage in appellate review of state court determinations.").

██ Although the Eighth Circuit apparently recognizes constructive trusts imposed in bankruptcy in sufficiently extreme circumstances, see *Chiu v. Wong,* 16 F.3d 306 (8th Cir.1994), "[e]ven in courts where constructive trusts are recognized in bankruptcy, the remedy is rarely granted and only in the most egregious of circumstances, and usually where a trust is sought on property in which the party claims an ownership interest." *Shubert v. Jeter (In re Jeter ),* 171 B.R. 1015, 1020 (Bankr.W.D.Mo.1994), *aff'd* 178 B.R. 787 (W.D.Mo.1995), *aff'd* 73 F.3d 205 (8th Cir.1996).

The equities of bankruptcy are not the equities of the common law. Constructive trusts are anathema to the equities of bankruptcy since they take from the estate, and thus directly from competing creditors, not from the offending debtor ... To a party defrauded by the debtor, incorporating the proceeds of fraud in the debtor's estate may seem like allowing the "estate to benefit from property that the debtor did not own." But ... "allowing the estate to 'benefit from property that the debtor did not own' is exactly what the strong-arm powers are about: they given the trustee the status of a bona fide purchaser for value, so that the estate contains interest to which the debtor lacked good title." The Code recognizes that each creditor has suffered disappointed expectations at the hands of the debtor; for this reason, it makes maximization of the estate the primary concern and entitlement to shares of the estate secondary. Imposing a constructive trust on the debtor's estate impermissibly subordinates this primary concern to a single claim of entitlement.

... To permit a creditor, no matter how badly he was "had" by the debtor, to lop off a piece of the estate under a constructive trust theory is to permit that creditor to circumvent completely the Code's equitable system of distribution.

*XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1452–53 (6th Cir. 1994) (citations omitted).

[A constructive trust] serves well to do equity as between trustee and beneficiary, but is obviously a dangerous game to play where innocent third parties ... are involved. As a general rule all parties owed unfulfilled obligations by another, that is the debtor, have as remedy claims for damages enforceable against the debtor's assets; and where debtor's assets are unsufficient (sic) to satisfy all such claims, then the claimant's share, pro-rata, in available assets, each claimant being satisfied or dissatisfied in proportion to his claim. But imposition of a constructive trust ... reserves such assets to the trust beneficiary exclusive of others, enlarging the beneficiary's recovery while reducing the recoveries of other creditors ... [I]mposing such constructive trusts amounts to giving the beneficiary a non-statutory priority over other creditors in distribution of estate assets. See *U.S. v. Randall,* 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 [ (1971) ].

*Bistate Oil Co. v. Heston Oil Co. (In re Heston Oil Co.),* 63 B.R. 711 (Bankr. N.D.Okla.1986).

The constructive trust sought by Time Warner in the New York litigation would greatly prejudice the bankruptcy estate, and by extension, the debtor's other creditors, if it were imposed in the New York litigation. Although Time Warner would be in violation of the automatic stay if it attempted to enforce a constructive trust against property of the bankruptcy estate without relief, the debtor and the other creditors could be without a remedy in the bankruptcy court should Time Warner nonetheless attempt to enforce it. This fact alone is of sufficient concern to warrant the overruling of Time Warner's motion.

After reviewing the various factors and balancing the equities of the case, it is apparent that cause does not exist to grant Time Warner relief from the stay to continue the New York litigation at this time.

## II. Bad Faith Filing

In addition to the various factors that have been reviewed, Time Warner maintains that cause exists for the stay to be lifted because the debtor has filed its petition in bad faith. Specifically, Time Warner argues that the filing was in bad faith for three reasons: (1) the timing of the filing; (2) the debtor was financially healthy when the petition was filed; and (3) the nature of the debtor's actions.

A lack of good faith in filing a petition in bankruptcy may constitute cause for the lifting of the automatic stay. *Laguna Assoc. Ltd. Partnership v. Aetna Casualty & Surety Co. (In re Laguna Assoc. Ltd. Partnership )*, 30 F.3d 734 (6th Cir.1994); *Carolin Corp. v. Miller,* 886 F.2d 693 (4th Cir.1989); *Barclays–American/Business Credit, Inc. v. Radio WBHP, Inc. (In re Dixie Broadcasting, Inc.),* 871 F.2d 1023 (11th Cir.), *cert. denied,* 493 U.S. 853, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989). However, Collier describes the cases that have used bad faith as a basis for vacating or annulling the automatic stay pursuant to § 362(d)(1) as "extreme." 2 LAWRENCE P. KING, ET AL., COLLIER ON BANKRUPTCY ¶ 362.07, at 362–76 (15th ed. 1996).

### 1. The Timing of the Filing

Time Warner has asserted in its brief that the bad faith of the debtor's filing is evidenced by the timing of the filing. There are reported cases that have held the filing of a petition in bankruptcy following an adverse court verdict or as a litigation tactic constitutes bad faith. See, *In re Sparklet Devices, Inc.,* 154 B.R. 544 (Bankr.E.D.Mo.1993); *In re HBA East, Inc.,* 87 B.R. 248 (Bankr. E.D.N.Y.1988). After a thorough review of the circumstances of the New York litigation, it does not appear that timing of the debtor's filing was made in bad faith.

The injunction order entered by Judge Treger in the New York litigation required the debtor to post a $1,000,000 bond, froze

the debtors assets, and prohibited the debtor from engaging in certain business practices. It is difficult to see how the debtor could continue to operate or even to pay its debts as they became due under these restrictions. Accordingly, the timing of the filing does not evidence bad faith on the part of the debtor.

## 2. *Financial Health of the Debtor at the Time of Filing*

 Time Warner states in its brief that at the time of the petition, the debtor had assets of nearly $6,000,000 and liabilities of $1,000,000. However, by granting the injunction, the district court determined that Time Warner was likely to be successful in the New York litigation. If Time Warner was successful in the litigation, it would be entitled to elect between the actual damages suffered, or statutory damages, which could amount in the tens, or possibly, hundreds of millions of dollars. That type of mammoth contingent liability could drive any financially healthy company into insolvency. Accordingly, the financial health of the debtor was in serious question following the imposition of the injunction, and this is not evidence of the bad faith of the debtor.

## 3. *The Prepetition Conduct of the Debtor*

A debtor's prepetition conduct may be relevant in certain circumstances to determine whether a debtor's petition was filed in bad faith and relief should be granted for cause. *In re Grieshop,* 63 B.R. 657 (N.D.Ind.1986); *Nations Bank, N.A. v. LDN Corp. (In re LDN Corp.),* 191 B.R. 320 (Bankr.E.D.Va.1996); *In re Lipply,* 56 B.R. 524 (Bankr.N.D.Ind.1986). Time Warner alleges in its brief that the debtor's business of selling decoder devices is criminal and it has suffered damages as a result. However, there is no evidence that the debtor has been indicted on or plead guilty to criminal charges regarding the complained of conduct. The debtor's prepetition conduct is only one of a number of indicia of bad faith, see, e.g., *Laguna Assoc. Ltd. Partnership,* 30 F.3d at 738, and there is no other evidence in the record at this time to indicate that the debtors filed their petition in bad faith.

## Conclusion

The motion for relief from the automatic stay is denied.

Separate journal entry to be filed.