**In the Matter of BELTON INNS, INC., Debtor.**

**Bankruptcy No. 86–261–C.**

United States Bankruptcy Court, S.D. Iowa.

Feb. 6, 1987.

---

Bruce L. Cook, Des Moines, Iowa, on behalf of debtor.

James L. Spellman, Des Moines, Iowa, on behalf of Thomas Nevis.

Daniel J. Flanigan, Kansas City, Kan., and Thomas L. Flynn, Des Moines, Iowa, on behalf of Merchants Bank.

John Waters, Des Moines, Iowa, on behalf of Iowa Dept. of Revenue.

Phillip A. Kusnetzky, Kansas City, Mo., and James B. Langeness, Des Moines, Iowa, on behalf of Southwest Tracor, Inc.

Gary D. Stump, Des Moines, Iowa, on behalf of City of Clive.

Lee H. Gaudineer, Des Moines, Iowa, on behalf of City of Johnston.

Michele A. Druker, Des Moines, Iowa, on behalf of FSLIC.

## MEMORANDUM OF DECISION AND ORDER

LEE M. JACKWIG, Bankruptcy Judge.

On October 7, 1986 a motion pursuant to Rule 3012 to determine value of secured claims and for order compelling debtor to sell property free and clear of liens pursuant to section 363(f) and for expedited emergency hearing, or in the alternative, for relief from stay was filed on behalf of Southwest Tracor, Inc. On the same date, another motion for relief from stay was filed on behalf of Merchants Bank of Kansas City, Missouri. On November 24, 1986 both motions came on for final hearing before this court in Des Moines, Iowa.

A resistance to Southwest Tracor's motion was filed by the Iowa Department of Revenue and Finance on October 14, 1986, and joined in by the city of Johnston on October 21, 1986 and the city of Clive on October 22, 1986. A resistance to both motions for relief from stay was filed by the Iowa Department of Revenue and Finance on October 22, 1986 and joined in by the cities of Clive and Johnston at the time of the November 24, 1986 hearing.

Southwest Tracor's motion to determine value of secured claims and for order compelling debtor to sell property was amended on November 19, 1986. The Federal Savings and Loan Insurance Corporation (hereinafter referred to as FSLIC) filed a brief in support of Southwest Tracor's motion, as amended, on November 21, 1986.

Appearing at the November 24, 1986 hearing were Bruce L. Cook on behalf of the debtor, James L. Spellman on behalf of Thomas Nevis, Daniel J. Flanigan and Thomas L. Flynn on behalf of Merchants Bank, John Waters on behalf of the Iowa Department of Revenue, Phillip A. Kusnetzky and James B. Langeness on behalf of Southwest Tracor, Inc., Gary D. Stump on behalf of the city of Clive, Lee H. Gaudineer on behalf of the city of Johnston and Michele A. Druker on behalf of FSLIC.

At the close of the November 24, 1986 hearing, the parties were ordered to submit exhibits from a May 7, 1986 hearing before the Honorable Richard Stageman, along with supporting briefs, by December 8, 1986. The matters were considered fully submitted on that date.

The record before the court on these matters consists of the following:

1. transcript of November 24, 1986 hearing before this court;

2. exhibits 1–6 received at the November 24, 1986 hearing;

3. transcript of May 7, 1986 hearing before the Honorable Richard F. Stageman;

4. exhibits 1–2 and A–E received at the May 7, 1986 hearing; and

5. oral depositions of Allan Trotter and James Moran authenticating an appraisal done by B.A. Appraisals, Inc. on behalf of

FSLIC and received at the May 7, 1986 hearing.

## FINDINGS OF FACT

1. The debtor, Belton Inns, Inc., owns real estate and related personal property used for the operation of a total of five hotels/motels at four sites: Des Moines, Iowa (2), Birmingham, Alabama, Dayton, Ohio and Euless, Texas.

2. Southwest Tracor, sold the properties in question to Belton Inns, Inc. in February of 1985 for approximately $17,500,000.

3. Merchants Bank is the holder of a first mortgage lien on all assets of the debtor. The principal amount of the original loan to debtor was $14,500,000. Interest accrues at the rate of $5,199.47 per day and $155,000.00 per month.

4. FSLIC holds a second mortgage lien against the debtor's assets. The principal amount of the original loan to the debtor was $4,500,000.

5. Southwest Tracor is a subordinated participant in the first mortgage debt to Merchants Bank. Tracor's original participation was $3,313,554.78 and was increased prior to the commencement of this case by an additional $1,000,000.

6. FSLIC and two unsecured creditors of Belton Inns, Inc. filed an involuntary Chapter 11 petition on January 31, 1986.

7. A stipulation and agreement regarding the entry of an order for relief, use of cash collateral and obtaining credit was filed March 7, 1986 by FSLIC, debtor, Merchants Bank and certain unsecured creditors. An order effectuating that agreement and thereby commencing a voluntary case was entered on March 14, 1986.

8. Pursuant to the above stipulation and order, Sterling Group, Inc., a hotel/motel management and development company, was employed to manage the properties of the debtor. A contract between Sterling Group and the debtor was signed on March 27, 1986.

9. Merchants Bank filed a motion for relief from stay on April 10, 1986.

10. Merchants Bank's motion came on for hearing before the Honorable Richard F. Stageman on May 7, 1986. At that time, testimony concerning the value of debtor's properties ranged from $15,637,000 as stated by Merchants Bank witness Jeffrey Marvel to $26,225,000 as stated by debtor's witness Dan Wigington. The outstanding indebtedness on the properties as of May 7, 1986 included approximately $15,400,000 to Merchants Bank, $5,000,000 to FSLIC, $300,000 in property taxes for 1985 and 1986 and an unknown amount for various mechanic's liens. (Southwest Tracor did not participate in the hearing.)

Regarding the condition of the collateral, Jeremiah Markert, vice president of Sterling Group's operations and marketing, testified that the properties were in need of major repair, that room sales were down, and that cash flow had been insufficient and was projected to be insufficient to make interest payments to Merchants Bank. In Mr. Markert's opinion, affiliation with a national hotel franchise, such as Days Inn, was imperative to the survival of the properties. He estimated that improving the properties to meet the standards of Days Inn and thereby to obtain franchise agreements would require a cash infusion of approximately $1,400,000.

11. At the conclusion of the May 7, 1986 hearing, Judge Stageman denied the motion for relief from stay. Judge Stageman found there was a modest equity cushion in the properties and determined that the management company and the debtor should be given a reasonable opportunity to turn the properties into a profitable venture.

12. On June 20, 1986 the FSLIC filed a motion for appointment of trustee. A hearing was held on FSLIC's motion on July 7, 1986 before Judge Stageman. The court's minute order dated July 14, 1986 stated that the "court will appoint an examiner" and that "a further order of court will set out the duties of the examiner". No further order is found in the court file.

13. On July 21, 1986 Merchants Bank, FSLIC and debtor entered into a stipulation regarding a franchise agreement between

Days Inn and debtor's motel property in Dayton, Ohio. An order was entered the same day approving the stipulation and allowing the advance of $50,000 by Merchants Bank to Sterling as an initial franchise fee in exchange for a secured and priority status.

14. On July 30, 1986 debtor filed a motion pursuant to Rule 3012 to determine value of secured claims and for authorization to sell property free and clear of liens pursuant to section 363(f) and for expedited emergency hearing. The debtor proposed a sale of the properties for $18,000,000 and set forth the following terms: that FSLIC be paid $1,500,000; that Merchants Bank receive all sale proceeds after various agreed payments; and that all other junior lienholders' claims be valued at $0. The debtor's motion was resisted by the cities of Clive and Johnston and by the Iowa Department of Revenue and Finance.

A hearing was held on debtor's motion on August 11, 1986 before the Honorable Judge Stageman. The court's minute order dated August 13, 1986 stated that "sale free and clear of liens is approved". However, the order stated that "an amount of proceeds sufficient to satisfy the asserted claims of the State of Iowa and the cities of Johnston and Clive must be deposited in an escrow account" and that "any attempt to determine the priority of liens must be made through an adversary proceeding".

In a subsequent order filed August 26, 1986, the court again reiterated the terms of the sale and that the claims of the State of Iowa and the cities of Johnston and Clive were to be determined by adversary proceeding. The court ordered that $166,000.00 (the amount asserted by the State of Iowa) from the sale proceeds be deposited with the bankruptcy clerk and, in the event that the claims were valued at $0 or otherwise disposed of, the funds were to be dispersed to FSLIC and Merchants Bank.

15. The sale contemplated under the above orders subsequently fell through on October 26, 1986.

16. On October 7, 1986 Southwest Tracor filed the motion which is the subject of this decision. Count I of Tracor's motion

seeks a determination of certain secured claims and an order compelling a sale free and clear of all liens on the debtor's assets. Count II of Tracor's motion seeks relief from the stay.

Tracor proposes a sale of the debtor's properties with the following terms: that Tracor shall be the buyer; that Tracor will assume the loan balance due to Merchants Bank ($16,045,000); that (per amended motion of November 19, 1986) Tracor will pay $125,000 to FSLIC; and that all other mechanic's liens and tax claims shall be valued at $0.

17. On October 7, 1986 Merchants Bank filed a motion for relief from stay, which is also under consideration at this time.

18. A hearing on the motions of Southwest Tracor and Merchants Bank was originally set for October 23, 1986. A joint motion for continuance was filed October 17, 1986 on behalf of both parties.

19. Waivers of the 30–day determination under section 362(e) were filed on October 17, 1986 on behalf of Southwest Tracor and Merchants Bank.

20. On November 24, 1986 a hearing on the motions of Southwest Tracor and Merchants Bank was held before this court.

At the hearing, debtor relied on the previous testimony of Dan Wigington concerning his valuation of the properties at $26,225,000. Jeffrey Marvel, from Laventhal & Horwath, testified for Merchants Bank as to his valuation of the debtor's properties at $15,637,000. Exhibit 3 represented a comparative analysis of the different appraisals done by B.A. Appraisals for FSLIC, Dan Wigington for the debtor, and Laventhal & Horwath for Merchants Bank. Mr. Marvel in exhibit 3 compared certain key factors in each of the appraisals with the actual performances of the Belton Inns during the year 1986. The analysis revealed, in terms of occupancy rates and profit ratio, that the valuation of Laventhal & Horwath was closest of the three to actual performance and that even that valuation was slightly optimistic.

The outstanding indebtedness on debtor's properties as of the November 24, 1986

hearing included $16,344,243.75 to Merchants Bank, with interest accruing at the rate of $155,000 per month, approximately $5,000,000 to FSLIC, approximately $166,560 to the State of Iowa and an unknown amount for various mechanics liens and tax claims. Southwest Tracor's participation in the first mortgage debt to Merchants Bank was approximately $5,273,424.19 at this time.

Testimony revealed that Merchants Bank had received partial interest payments from June through October of 1986. However, Jeremiah Markert, a representative of Sterling management, testified that he did not anticipate that the properties would generate enough money to pay just the operating expenses in the month of December, let alone, any interest to the Bank from November through February. Mr. Markert also stated that various real estate and property taxes were coming due and could not be paid.

Mr. Markert again described the deteriorating physical condition of the properties and the need for renovation and for subsequent affiliation with a national franchise.

21. As of the November 24, 1986 hearing, the debtor had not filed a plan of reorganization despite previously obtaining an extension of time from Judge Stageman to October 12, 1986. A request for a further extension of time in which to file a plan was made at the time of the hearing and was taken under advisement with the other motions.

## APPLICABLE CODE SECTIONS

The requirements for obtaining relief from the automatic stay are contained in 11 U.S.C. section 362(d), which provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of any act against property under subsection (a) of this section, if—

(A) the debtor does not have any equity in such property; and

(B) such property is not necessary to an effective reorganization.

With respect to the burdens of proof, 11 U.S.C. section 362(g) states:

In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

In seeking a sale of the properties, Southwest Tracor relies upon 11 U.S.C. section 363(f) which provides:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

## ANALYSIS

I. *Section 363(f)*

■ In its motion, Southwest Tracor seeks an order, pursuant to section 363(f), compelling debtor to sell property free and clear of liens. Southwest Tracor does not cite any case authority in support of its motion. Section 363(f) clearly authorizes such a sale only by the trustee or debtor-in-possession and only if one of the five statutory conditions is met. *See, Matter of Stroud Wholesale, Inc.*, 47 B.R. 999 (D.C.

N.C.1985). This court has not found any case law that would otherwise support Tracor's position.

Although Southwest Tracor also refers the court to its section 105(a) powers, such reliance is misplaced in that this court may not circumvent clear statutory requirements under the guise of equitable powers. Once again the movant has failed to support its position with case authority and this court has found none.

Parenthetically, Southwest Tracor's motion parallels a previous motion to sell by the debtor. As was true in approving that sale, granting Tracor's motion would require that funds sufficient to satisfy the claims of the State of Iowa and the cities of Johnston and Clive be escrowed until the validity, priority and extent of those claims could be determined by an adversary proceeding.

II. *Section 362(d)(1)*

Both movants seek relief from stay for cause, including the lack of adequate protection of their interest in debtor's property. The debtor opposes both motions for relief from stay on the grounds that the value of the collateral exceeds the debt owed to Merchants Bank and that the Bank is adequately protected by various guarantees of its loan with the debtor.

Resolution of the adequate protection issue requires both a determination of the fair market value of the debtor's property and an identification of what interests should be protected by the court under the facts and circumstances of a particular case. *In re Briggs Transp. Co.*, 780 F.2d 1339, 1349 (8th Cir.1985); *In re Park West Hotel Corp.*, 64 B.R. 1013, 1019–1020 (Bankr.Mass.1986). With respect to the determination of fair market value, "the court can only endeavor to make a reasonable estimate of value based upon expert testimony presented to it in court". *In re R & H Investment Co., Inc.*, 46 B.R. 114, 116 (Bankr.Conn.1985).

The expert testimony of the professional analysts produced values that differed by slightly more than ten million dollars. The $26,225,000 appraisal relied upon by the debtor was completed in February of 1985. The debtor's valuation witness was not willing to state on November 24, 1986 that the value of the properties remained unchanged from the May 7, 1986 hearing on the motion for relief from stay.

At the other end of the spectrum, the $15,637,000 appraisal relied upon by Merchants Bank was completed in May of 1986. At the November 24, 1986 hearing, a comparative analysis of the different appraisals was received. This analysis revealed that when two key factors (occupancy rates and profit ratio) in each of the appraisals were compared to actual performance of the debtor's properties, the appraisal done on behalf of Merchants Bank represented the most accurate evaluation of the properties' value.

A third appraisal prepared by B.A. Appraisals, Inc. on behalf of the FSLIC valued the debtor's property as of November 13, 1985 at $17,675,000. This valuation, however, did not take into account delinquent taxes and assumed various capital expenditures would be made on the properties.

After consideration of the time and basis of each of the above appraisals and of the testimony concerning the declining physical condition of the subject properties, this court determines that the valuation of $15,637,000 by Laventhal & Horwath on behalf of Merchants Bank most accurately reflects the fair market value of the properties.

With respect to what constitutes adequate protection under the facts and circumstances of this proceeding, it should be noted that the classic protection for a secured debt, justifying continuation of the stay, is the existence of an "equity cushion," which is defined as "the value in the property above the amount owed to the creditor with a secured claim that will protect that creditor's secured interest from decreasing in value during the period that the automatic stay remains in effect". *In re Jug End in the Berkshires, Inc.*, 46 B.R. 892, 899 (Bankr.Mass.1985). The existence of liens junior to the movant's lien

are not relevant to a determination under 11 U.S.C. section 362(d)(1). *Id.* at 901. The total amount owed to Merchants Bank on its first mortgage as of the November 24, 1986 hearing was $16,344,243.75. The existence of that debt alone, when compared to the accepted valuation of the debtor's properties at $15,637,000, leaves no equity cushion to protect the Bank's interest in the property.

In response, debtor argues that Merchants Bank is adequately protected by the existence of various guarantees on its first mortgage. The debtor points to various individual guarantors as well as Southwest Tracor as a participant guarantor. Although a guarantee secured by collateral may qualify as the indubitable equivalent of adequate protection, courts have generally found that a guarantee which is not backed by collateral does not provide such protection of a creditor's interest in property. *See, In re Harpley Builder, Inc.,* 44 B.R. 151, 155 (Bankr.N.D.Ohio 1984) and cases cited therein.

In the instant case, Mr. Lievense, senior vice-president of Merchants Bank, testified that the guarantors of its loan to debtor had pledged collateral in the form of a Certificate of Deposit for approximately one million dollars and real estate valued at approximately one million dollars. No evidence was received concerning the financial condition of the individual guarantors. The ability of Southwest Tracor to continue its participation in the loan, however, was shown to be in serious question given the income tax lien filed against it for approximately $1,500,000. Based on this evidence, the court must find that the guarantees do not provide Merchants Bank with adequate protection.

### III. *Section 362(d)(2)*

Relief from stay under section 362(d)(2) may be granted even if there is an adequate equity cushion and the debtor is able to provide an alternate means of adequate protection. *In re Jug End in the Berkshires, Inc.,* 46 B.R. at 900–901. Even though relief from the automatic stay may be granted pursuant either to section

362(d)(1) or to section 362(d)(2) and this court has decided that relief is proper pursuant to the first subsection, this decision will address the question of relief under the second section, which was also raised by Merchants Bank.

Under section 362(d)(2), the stay may be modified if two requirements are met: the debtor lacks equity in the property, and the property is not necessary to an effective reorganization. This court subscribes to the majority view which defines equity in debtor's property as the difference between the property value and all encumbrances against it. *See, In re Jug End in the Berkshires, Inc.,* 46 B.R. at 900–01 and cases cited therein; *In re Irving A. Horns Farm, Inc.,* 42 B.R. 832, 836 (Bankr.N.D.Iowa 1984).

As previously noted, the Merchants Bank lien in the amount of $16,344,243 alone exceeds what this court has determined to be the fair market value of the debtor's property. Consideration of the second mortgage lien of FSLIC in the amount of $5,000,000 brings the total secured debt well above even the more liberal B.A. appraisal of $17,675,000 and the debtor's own proposed sale price of $18,000,000. Even without resort to various mechanics liens and tax claims, it is apparent that the debtor has no equity in the properties. The court, therefore, must determine whether the property is necessary for an effective reorganization.

The Eighth Circuit recently adopted other court interpretations of the "necessary for an effective reorganization" standard as requiring a debtor not only to show that the property is essential to reorganization but to demonstrate that an effective reorganization is realistically possible. *In re Ahlers,* 794 F.2d 388, 398–99 (8th Cir.1986). A bare assertion by the debtor that the property is necessary for survival and reorganization does not satisfy the standard. *Matter of Weiser, Inc.,* Case No. 86–73–c, slip opinion at 11 (Bankr.S.D.Iowa 1986). As explained by the court in *In re Clark Technical Associates, Ltd.,* 9 B.R. 738, 748 (Bankr.Conn.1981):

It is not enough for a debtor to argue that the automatic stay should continue because it needs the secured property in order to propose a reorganization. If this were the test all property held by debtors could be regarded as necessary for the debtor's reorganization. The keyword under 11 U.S.C. § 362(d)(2)(B) is "effective"; ...

If all the debtor can offer at this time is high hopes without any financial prospects on the horizon to warrant a conclusion that reorganization in the near future is likely, it cannot be said that the property is necessary to an "effective" reorganization. (Citations omitted.)

In the present case, the debtor has failed to establish that the property is necessary for an effective reorganization. The evidence presented to this court established that the properties would not be able to meet bare operating expenses, let alone pay accruing interest, insurance and tax obligations during the months of December 1986 through February 1987. It was agreed that the only salvation for these properties would be to affiliate with Days Inn. Even that solution would require the infusion of over a million dollars.

It should be noted that in its motion for sale, the debtor admitted "the properties in their present condition cannot be sold for the amount of the mortgage debt and taxes" and "it will be difficult for the debtor to secure the funds necessary to rehabilitate and convert the properties to Days Inns franchises". Nevertheless, now that debtor's proposed sale has fallen through and the extended exclusivity time has passed, debtor asks this court for additional time to rehabilitate its properties and present a workable plan of reorganization. This court will not permit the further deterioration of creditors' interests in these properties while debtor chases a "mere financial pipe dream". *In re Dublin Properties*, 12 B.R. 77, 81 (Bankr.E.D.Pa.1981).

## CONCLUSION AND ORDER

WHEREFORE, based on the foregoing facts, applicable law and analysis, the court concludes that the requested relief from the automatic stay is proper under either 11 U.S.C. section 362(d)(1) or (2).

The court further concludes that neither the facts nor the law support the relief sought by Southwest Tracor with respect to the sale of the assets to it free and clear of liens.

THEREFORE, IT IS ORDERED that the motions for relief from stay filed by Merchants Bank and by Southwest Tracor be granted and the motion for order compelling the debtor to sell the five properties filed by Southwest Tracor be denied.