# United States Bankruptcy Appellate Panel
**FOR THE EIGHTH CIRCUIT**

_____

No. 02-6057WM

_____

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| William Carl Wiley | * | |
| | * | |
| Debtor. | * | |
| | * | |
| William Carl Wiley | * | |
| | * | |
| Debtor-Appellant, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| v. | * | Western District of Missouri |
| | * | |
| Geoffrey Hartzler | * | |
| Dorothy Hartzler | * | |
| | * | |
| Creditors-Appellees | * | |
| | * | |
| | * | |
| | * | |

_____

Submitted: February 5, 2003
Filed: February 19, 2003

_____

Before KRESSEL, Chief Judge, SCHERMER and DREHER, Bankruptcy Judges.

_____

KRESSEL, Chief Judge.

William Carl Wiley appeals from the order of the bankruptcy court[1] which granted Geoffrey and Dorothy Hartzler relief from the automatic stay. Because we believe the bankruptcy court did not abuse its discretion, we affirm.

## BACKGROUND

In 1998, the Hartzlers, residents of Johnson County, Kansas, wanted to build a home in Camden County, Missouri. The Hartzlers contacted William C. Wiley Construction, Inc.[2] The Hartzlers allege that the parties orally agreed that Wiley Construction would be paid a 12% mark-up, above and beyond time and materials. On October 2, 1998, the Hartzlers and Wiley Construction entered into a construction agreement.

On October 6, 1998, the Hartzlers, Wiley Construction, and Legend Title Co., Inc. entered into an escrow agreement. Pursuant to the agreement, the Hartzlers escrowed certain funds and Wiley Construction was authorized to draw on the funds to make payment upon any construction agreement addenda. The Hartzlers argue that the debtor and Wiley Construction represented that each draw applied for and received would be consistent with the agreed-upon 12% mark-up. The debtor argues he did not agree to the 12% mark up, and that under the construction agreement, the contract price was subject to additions and deductions by Change Order, and that the Hartzlers were not charged a fixed fee because of the uniqueness, unknowns, and size of the project. Pursuant to the construction agreement, the work on the property progressed and Wiley Construction submitted bids for each job to be undertaken at the property. The Hartzlers approved the job bids submitted by Wiley Construction.

---

[1] The Honorable Frank W. Koger, United States Bankruptcy Judge for the Western District of Missouri. Sadly, Judge Koger died on January 3, 2003.

[2] The Hartzlers argue the debtor owns 100% of Wiley Construction.

The Hartzlers allege that Wiley Construction was not properly performing its duties as provided in the construction agreement because there were significant delays and an insufficient work force on the job site. The Hartzlers also suspected that Wiley Construction was exceeding the 12% mark-up. The Hartzlers argue that Wiley Construction had in fact exceeded the mark-up, with an average mark-up of 27.79%. The Hartzlers have alleged that the debtor, in serving in his individual capacity, as well as an agent for Wiley Construction, engaged in a series of wrongful acts with respect to their property and in dealings with them.[3]

On or around February 26, 2001, the Hartzlers told the debtor that Wiley Construction would no longer be involved in the project and requested him to sign a settlement agreement "parting ways and avoiding lawsuits." The Hartzlers and Wiley Construction entered into the Settlement Agreement. That agreement required Wiley Construction to: (1) submit a final lien waiver and affidavit to the Hartzlers; (2) make no claims, commitments or representations concerning the project and/or the debtor's involvement in the project to any media source, and not cause Wiley Construction to be associated with the project in any advertizing or visual presentation; and (3) take no action to impede, obstruct, affect, alter or influence the Hartzlers' ability to retain general contractors and subcontractors, materials, supplies or services to complete the project. The Hartzlers maintain that the debtor breached this agreement by failing to submit a final lien waiver and affidavit, utilizing photos of the Hartzler home on the debtor's website, and by disparaging the Hartzlers in the

---

[3] The Hartzlers allege the debtor, besides receiving mark-ups in excess of 12%, also committed the following wrongful acts: took building materials intended for use at the Hartzler property (which the debtor admits), and used them in construction of the debtor's personal residence; suggested that subcontractors artificially inflate billings; hired subcontractors in a manner that required the Hartzlers to pay double mark ups; paid an improper kick back to the real estate agent who referred the Hartzlers to the debtor and made such payment with escrowed funds; and caused the Hartzlers to pay for all of the debtor's and Wiley Construction's wrongful actions by improperly taking and applying escrowed funds.

local construction community. As a result, the Hartzlers filed suit in the U.S. District Court for the District of Kansas on October 24, 2001.[4]

Since October 24, 2001, the Hartzlers maintain that the parties have exchanged Rule 26 disclosures, creditors have served written discovery, debtor has responded to creditors' written discovery, William Wiley appeared on behalf of Wiley construction in a Fed.R.Civ.P. 30 (b)(6) deposition, depositions of fact witnesses have commenced. Trial of the Hartzler suit had been set for a two week jury trial in December 2002.

The debtor filed for bankruptcy protection under Chapter 13 on July 9, 2002. The debtor listed the Hartzler claim as contingent, unliquidated and disputed for a unknown amount, in addition to $3,300 for reimbursement for materials used.[5] The Hartzlers filed two proofs of claim in the case, totaling $693,000.

On July 24, 2002, in an effort to complete the litigation which began in the district court, the Hartzlers filed a Motion to Dismiss the case[6] or in the alternative, relief from the automatic stay. At the hearing, the bankruptcy court heard testimony from the debtor. After reviewing the evidence, the court granted the Hartzlers relief from the automatic stay on October 2, 2002. The debtor filed a notice of appeal on

---

[4] The allegations above have been embodied in an Amended Complaint which asserts numerous causes of action including fraud, fraud by silence, breach of contract (Settlement Agreement), conversion, violation of the merchandising practices act and consumer protection act, breach of fiduciary duty, and a count for declaratory judgment requesting the court to set aside the settlement agreement. The Hartzlers also argue that the debtor is one in the same with William C. Wiley Construction, Inc. and that the corporate veil should be pierced so that the debtor may be adjudged jointly and severally liable with the corporation.

[5] The Hartzlers agree that the bulk of their claim is contingent and unliquidated.

[6] The Hartzlers argue the debtor filed his case in bad faith.

October 14, 2002. On October 28, 2002, the debtor filed an emergency motion with the bankruptcy court for a stay pending appeal. This motion was denied by the bankruptcy court on November 26, 2002. The debtor subsequently filed a Motion for Stay Pending Appeal with this Court, which we denied on December 17, 2002.

## DISCUSSION

### STANDARD OF REVIEW

We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. *Blackwell v. Lurie (In re Popkin & Stern)*, 223 F.3d 764, 765 (8th Cir. 2000); *Wendover Fin. Servs. v. Hervey (In re Hervey)*, 252 B.R. 763, 765 (B.A.P. 8th Cir. 2000). A decision to grant or deny a motion for relief from the automatic stay is within the discretion of the bankruptcy court and as such, is reviewed for an abuse of discretion. *Blan v. Nachogdoches County Hosp. (In re Blan)*, 237 B.R. 737, 739 (B.A.P. 8th Cir. 1999). An abuse of discretion will only be found if the bankruptcy court's judgment was based on clearly erroneous factual findings or erroneous legal conclusions. *Id*. A finding is clearly erroneous when although there is evidence to support it, the reviewing court, on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Anderson v. City of Bessermer City*, 470 U.S. 564, 573 (1985).

### THE MERITS

The mere filing of a petition in bankruptcy cannot, in and of itself, erase a plaintiff's claim, its opportunity to litigate, or the fact that the debtor may be liable to the plaintiff in some amount. *In re Bock Laundry Mach. Co.,* 37 B.R. 564, 567 (Bankr.N.D.Ohio 1984). Bankruptcy Code section 362(d)(1) provides that the bankruptcy court may grant relief from the automatic stay for cause. *In re Blan*, 237 B.R. at 739. Although Congress did not define cause, it intended that the automatic stay could be lifted to allow litigation involving the debtor to continue in a non-

bankruptcy forum under certain circumstances. *Id.* (citing H.R.Rep. No. 95-595, at 341 (1977); S.Rep. No. 95-989, at 50 (1978)). It would often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from duties that may be handled elsewhere. *Id.* (citing *In the Matter of United Imports*, *Inc.*, 203 B.R. 162, 166 (Bankr.D.Neb. 1996)).

In making the determination of whether to grant relief from the stay, the court must balance the potential prejudice to the debtor, to the bankruptcy estate, and to the other creditors against the hardship to the moving party if it is not allowed to proceed in state court. *In re Blan,* 237 B.R. at 739. The factors used to balance the hardships are: (1) judicial economy; (2) trial readiness; (3) the resolution of preliminary bankruptcy issues; (4) the creditor's chance of success on the merits; (5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors. *Id.*

## JUDICIAL ECONOMY[7]

Regarding judicial economy, the court noted in its order denying stay pending appeal, that the litigation in this case is complex and the court was convinced that it would be appropriate to permit the lawsuit to continue in the Kansas District Court in order to relieve the bankruptcy court from duties that can be handled elsewhere. Moreover, the debtor's co-defendant, the corporation, has not filed bankruptcy and the court agreed with the Hartzlers' counsel that it would be difficult for them to proceed with the Kansas District Court litigation in the absence of the debtor. Most

---

[7] The debtor makes much of the statement in the bankruptcy court order that the dischargeability of the Hartzlers' claim was within the exclusive jurisdiction of the bankruptcy court. Obviously, the bankruptcy court knew that debts of the kind alleged by the Hartzlers are dischargeable in a Chapter 13 case. It specifically said so in its November 26, 2002 order. The bankruptcy court also knew that many chapter 13 cases are converted to chapter 7.

importantly, the bankruptcy court noted that it does not have jurisdiction over the debtor's co-defendant, and it serves judicial economy to allow the Kansas District Court litigation to proceed against both defendants. The evidence considered by the bankruptcy court led it to reasonably find that the most appropriate forum to conduct the litigation would be the Kansas District Court. These findings are not clearly erroneous.

## TRIAL READINESS, PRELIMINARY BANKRUPTCY ISSUES AND CREDITOR SUCCESS ON THE MERITS

The issues of trial readiness, the resolution of preliminary bankruptcy issues, and the creditor's chance of success on the merits were addressed in the order denying stay pending appeal. The court noted that "the Hartzlers have been conducting discovery as best as they can in light of the debtor's bankruptcy filing, and it appears that after more depositions are taken, they will be ready for trial." The bankruptcy court also found that there are no preliminary bankruptcy issues that must be resolved before the Kansas District Court litigation can proceed. Finally, the court found that the Hartzlers may succeed on the merits of their claim. Such findings are not clearly erroneous.

Although the debtor argues that allowing the Hartzlers to continue with their case in District Court may jeopardize the bankruptcy estate, the bankruptcy court noted in its order denying stay pending appeal that it did not believe the bankruptcy estate would be prejudiced by allowing the Kansas District Court litigation to proceed. The bankruptcy court also found that this would in fact reduce the potential harm to the debtor.

First, any fees paid out of the estate for defense must be approved by the bankruptcy court. The debtor's proposed plan payment is $460 per month for 60 months, or approximately $27,000. The debtor has estimated that the cost to prepare and defend the litigation of a two week jury trial would be approximately $80,000 to

$120,000.[8] The debtor argues that if he cannot afford to defend, and the Hartzler's end up with a default judgment in excess of the chapter 13 eligibility cap[9], he will be ineligible for chapter 13, and may face collateral estoppel issues of nondischargeability if he converted to chapter 7. The mere cost of defense, however, is ordinarily considered an insufficient basis for denying relief from the stay. *In the Matter of United Imports, Inc.*, 203 B.R. 162, 169 (Bankr.D.Neb. 1996); *Smith v. Tricare Rehab. Sys., Inc. (In re Tricare Rehab. Sys., Inc.*) 181 B.R. 569, 575 (Bankr.N.D.Ala. 1994).

## CONCLUSION

The order of the bankruptcy court granting relief from the automatic stay is affirmed.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE
PANEL, EIGHTH CIRCUIT.

---

[8] No basis is given for this estimate and, frankly, it seems rather high. The amount and the nature of the Hartzlers' debt will have to be determined for the purpose of distribution under the plan, and possibly to determine confirmation of the plan or dismissal of the case. Except for the right to a jury trial, the issues are no more difficult to litigate in the district court than in the bankruptcy court.

[9] This is an incorrect supposition. Eligibility for Chapter 13 is determined as of the commencement of the case. *Barcal v. Laughlin (In re Barcal),* 213 B.R. 1008, 1014-1015 (B.A.P. 8th Cir. 1997). Later liquidation of claims does not in and of itself alter eligibility. We do not read the bankruptcy court's earlier opinion in *In re Rigdon*, 94 B.R. 602, 604-605 (Bankr.W.D.Mo. 1988), to hold otherwise.

8