# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 10-6086

_____

In re:  Panther Mountain Land      *
Development, LLC      *
     *
Debtor      *
     *
National Bank of Arkansas      *
     *
Movant - Appellant      *    Appeal from the United States
     *    Bankruptcy Court for the
v.      *    Eastern District of Arkansas
     *
Panther Mountain Land      *
Development, LLC      *
     *
Debtor - Appellee      *
     *
The Holloway Firm, Inc.      *
     *
Respondent - Appellee      *

_____

Submitted:  March 1, 2011
Filed: April 15, 2011

_____

Before SCHERMER, FEDERMAN and VENTERS, Bankruptcy Judges

FEDERMAN, Bankruptcy Judge

Debtor Panther Mountain Land Development, LLC owns certain tracts of undeveloped real estate. More than a year prior to the filing of this bankruptcy case, representatives of the Debtor obtained the approval of the Pulaski County Court to form certain Improvement Districts under applicable Arkansas statutes. The Improvement Districts are separate entities which are not themselves in bankruptcy. Secured creditor National Bank of Arkansas now contends that such Improvement Districts were not validly formed, and wishes to file suit to challenge their validity in the Pulaski County Court. The issue on this appeal is whether the Bankruptcy Court[1] properly denied the Bank's request for relief from the stay to file and proceed with such action in state court, at the same time that the Debtor is attempting to reorganize under Chapter 11.

## PROCEDURAL BACKGROUND

Debtor Panther Mountain Land Development, LLC filed this voluntary Chapter 11 case on September 20, 2009. National Bank of Arkansas is a secured creditor with mortgages on the Debtor's 17 lots in the Panther Mountain Estates subdivision ("Panther Mountain"), as well as the Debtor's undeveloped 125-acre tract located near Maumelle, Arkansas ("Sunset Lakes"). The Bank says it is owed about $2.1 million on two notes secured by the two properties. The day after the case was filed, the Bank filed a motion for relief from stay to proceed with a state court foreclosure which had been filed on November 4, 2008 (the "First Motion for Relief").

The Court held hearings on the First Motion for Relief on November 17 and December 2, 2009. The Bank's appraiser, Dwight Pattison, testified that the value of the property was only slightly more than the debt. At the conclusion of the December 2 hearing, the Bankruptcy Court denied the relief requested in the First Motion for Relief, finding that Pattison's appraisal and testimony were unreliable and

---

[1] The Honorable Audrey R. Evans, United States Bankruptcy Judge for the Eastern District of Arkansas.

unpersuasive. The Court found that the Bank was adequately protected by an equity cushion.[2]

Five months later, on April 26, 2010, the Bank again moved for relief from the stay (the "Second Motion for Relief") and also filed a motion for valuation of its secured claims (the "Valuation Motion"). The Court held hearings on those motions on August 4, August 20, and August 23, 2010. At these hearings, the Bank's licensed appraiser, B.A. McIntosh, testified that the value of the Bank's collateral was less than the debt. At the conclusion of that last hearing, the Court took the matter under advisement and allowed the parties time to submit post-trial briefs.

On August 23, 2010, while the parties and the judge were in session for the hearing on the Second Motion for Relief, the Bank filed a third motion for relief from stay (the "Third Motion for Relief"), this time asserting that the case was a single asset real estate case and, thus, subject to § 362(d)(3).[3]

Meanwhile, on September 9, 2010, the Debtor filed a § 363 motion to sell 45 acres of the undeveloped 125 acres in Sunset Lakes to ERC Land Development, LLC, free and clear of liens. The Bank filed an objection to that motion on September 17, 2010. As discussed below, the sale was approved, but then fell through, so that approval is not part of this appeal.

---

[2] *See In re Johnson*, 90 B.R. 973, 979 (Bankr. D. Minn. 1988) ("The primary factor in determining the existence of adequate protection in this case is the existence of an adequate equity cushion. Although not specifically mentioned in 11 U.S.C. § 361, it is the classic protection for secured debt justifying continuation of the stay."); *In re Belton Inns, Inc.*, 71 B.R. 811, 816 (Bankr. S.D. Iowa 1987) ("[T]he classic protection for a secured debt, justifying continuation of the stay, is the existence of an 'equity cushion.'").

[3] Section 362(d)(3) requires that if a debtor is designated as the owner of "single asset real estate," it must either begin payment to the secured creditor or file a Plan of Reorganization meeting certain standards within certain time periods. The Debtor filed a Plan prior to the hearing on the Third Motion for Relief, so that motion was denied as moot, and is not a subject of this appeal. 11 U.S.C. § 362(d)(3).

Then, on September 23, 2010, while the decision on the Second Motion for Relief was under advisement, and also while the Third Motion for Relief was scheduled to be heard, the Bank filed a fourth Motion for Relief from Stay (the "Fourth Motion for Relief"), this time seeking the Court's authority to file a state court lawsuit to challenge the inclusion of the Bank's collateral in Improvement Districts without notice to the Bank. The Improvement Districts had been formed more than two years prepetition pursuant to Arkansas' Property Owners' Improvement District Law[4] to create easements and to obtain financing for sewers, roads, and utility service to the undeveloped land, and to impose assessments on the landowners to pay for such improvements. The Bank characterizes the Fourth Motion for Relief as being filed as a cautionary measure – arguing that it was not even necessary because the Improvement Districts are non-debtors. The Bankruptcy Court noted that this Fourth Motion for Relief was the first time the Bank had raised an issue about the Improvement Districts.

On October 22, 2010, the Court entered a Memorandum Opinion and Order denying the Second Motion for Relief, as well as denying the Valuation Motion, finding in detail that McIntosh's appraisals and testimony were materially flawed and unreliable.

On October 28, 2010, the Court held a hearing on the Fourth Motion for Relief and on the Debtor's Sale Motion. According to the Court, at that hearing, the Bank presented the same appraisals it had submitted in support of the Second Motion, and again called McIntosh as its expert witness, who basically testified the same way he had before, despite the Court's detailed findings as to his lack of credibility.

Additionally at the October 28 hearing, the Bank argued that it should be allowed to file suit in Pulaski County because formation of the Improvement Districts

---

[4] Ark. Code. Ann. § 14-93-101 to -133.

4

without formal notice to it violated its rights under the Fourteenth Amendment to the United States Constitution, and under the Arkansas Constitution. The Bank concedes that such notice was not required under the Arkansas statutes applicable at the time the Improvement Districts were formed.

The Court ruled the motions from the bench with detailed findings on November 12, and supplemented such findings in writing on November 17, 2010. As relevant to this appeal, the Court denied the Fourth Motion for Relief.[5] In doing so, the Bankruptcy Court relied in part on § 362(a)(3) of the Bankruptcy Code, which provides that the automatic stay protects the Debtor not just against actions to obtain possession of property of the estate, but also actions to exercise control over property of the estate. Based on that provision, the Court found that a state court lawsuit attacking the Improvement Districts would inevitably interfere with the Debtor's interest in its property, and would adversely affect its ability to reorganize. Further, although the Court declined to decide the underlying merits of the Bank's due process argument – which would form the basis of its state court lawsuit – the Court again found that the Bank's interests were adequately protected by an equity cushion while the Debtor was in Chapter 11, and that its lien would attach to any sale proceeds. Based on the conclusion that the state court lawsuit would interfere with the Debtor's property such that the automatic stay applied, and that the Bank's interests were adequately protected, the Court held that the Bank had not demonstrated cause to lift the automatic stay, as provided by § 362(d)(1) of the Bankruptcy Code. The Court also held that the motion had been filed in bad faith, to interfere with the proposed sale of the property and was further barred by laches.[6] The Bank appeals.

---

[5] The Court did allow the Bank to request that the Pulaski County Court correct a scrivener's error in the order approving formation of one of the Improvement Districts, but that ruling is not contested here. In addition, for reasons stated, the Court's ruling denying the Third Motion for Relief based on § 362(d)(3) is not part of this appeal.

[6] We note that the issues of bad faith and laches are related to a separate proceeding, in which the Court has ordered the Bank and its counsel to show cause why they should not be held in contempt of court, and/or sanctioned, for their conduct in filing, and their presentation of

## STANDARD OF REVIEW

We review the Bankruptcy Court's factual findings for clear error and its conclusions of law *de novo*.[7] A decision to grant or deny a motion for relief from the automatic stay is within the discretion of the bankruptcy court and as such, is reviewed for an abuse of discretion.[8] An abuse of discretion will only be found if the bankruptcy court's judgment was based on clearly erroneous factual findings or erroneous legal conclusions.[9] A finding is clearly erroneous when although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed.[10]

## DISCUSSION

As relevant here, the Bank makes two primary arguments. First, it contends that the automatic stay does not protect the Improvement Districts from the proposed lawsuit because they themselves are not in bankruptcy. And second, it contends that it should be permitted to proceed with the suit because the Improvement Districts were formed in violation of its rights under the Due Process Clause of the United States Constitution and the corresponding provision of the Arkansas Constitution. Somewhat related to its due process argument, the Bank argues that the order denying its motion for relief should be treated as an injunction, and that the Debtor did not comply with the procedures and offer evidence sufficient to obtain an injunction under

---

evidence at the hearing on, the Fourth Motion for Relief where they raised, for the first time, the validity of the Improvement Districts. As discussed below, we need not, and do not, reach the issues of bad faith and laches in this appeal.

[7] *In re Wiley*, 288 B.R. 818, 821 (B.A.P. 8th Cir. 2003).

[8] *Id.*

[9] *Id.*

[10] *Id.*

the Bankruptcy Rules. For reasons to be described, we hold that, since the Bank's action against the Improvement Districts would inevitably have an adverse impact on the Debtor, such action is subject to the automatic stay. Furthermore, we hold that the Bank has not demonstrated cause for relief from such automatic stay.

### a. The Automatic Stay

The crux of the Bank's argument on appeal is that the automatic stay is not applicable to an action against the Improvement Districts. In other words, the Bank's motion simply sought a "comfort order" to allow it to do what it contends it has the right to do regardless. Generally speaking, the automatic stay "applies only to bar actions against the debtor and does not extend to solvent codefendants."[11]

However, § 362(a)(3) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Section 362(a)(3) "protects the in rem jurisdiction of the Court, and prohibits interference with the disposition of the assets that are under the Court's wing – whether or not the Debtor is named as a defendant as part of the effort. And that is so without distinction as to the form the interference takes."[12] "*If action taken against the non-bankrupt party would inevitably have an adverse impact on property of the bankrupt estate, then such action should be barred by the automatic stay.*"[13]

---

[11] *C.H. Robinson Co. v. Paris & Sons, Inc.*, 180 F.Supp.2d 1002, 1009 (N.D. Iowa 2001) (citing *Sav-A-Trip Inc. v. Belfort*, 164 F.3d 1137, 1139 (8th Cir. 1999) (additional citations omitted)).

[12] *Adelphia Communications Corp. v. America Channel, LLC (In re Adelphia Communications Corp.)*, 345 B.R. 69, 76 (Bankr. S.D. N.Y. 2006).

[13] *Id.* (quoting *48ᵗʰ St. Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48ᵗʰ St. Steakhouse, Inc.)*, 835 F.2d 427, 431 (2d Cir. 1987)) (emphasis added).

In *Adelphia*, the debtors were attempting to sell their assets to Time Warner Cable and Comcast. A not-yet-operational cable channel, The America Channel, LLC, filed an antitrust suit against Time Warner and Comcast, as the potential purchasers of the assets to prohibit them from completing the purchase. The debtors, who were not named as defendants, filed an adversary proceeding seeking an injunction against the lawsuit because it adversely affected the pending sale of the assets. In issuing a temporary restraining order against the antitrust litigation, the bankruptcy court held that even though The America Channel had not sued the debtors themselves, the practical effect of the suit could be to enjoin the sale of the debtors' property to those who had been sued. The court referred to the antitrust lawsuit as a "classic, and egregious, violation of section 362(a)(3)."[14]

Similarly, in *A.H. Robins Co.*,[15] the Fourth Circuit extended the automatic stay to officers and directors of the debtor, who had been named as co-defendants in an overwhelming number of product liability suits. In extending the automatic stay, the Fourth Circuit held that it did so because of the "unusual situation" in which the identity of interests between the debtor and the other defendants created a situation in which a judgment against the co-defendants would, as a practical matter, be a judgment against the debtor.[16] The Eighth Circuit has similarly recognized that, under "unusual circumstances," the automatic stay can embrace claims against non-bankrupt parties.[17]

---

[14] *Id.* at 72.

[15] *A.H. Robins Co., v. Piccinin*, 788 F.2d 994 (4th Cir. 1986).

[16] *Id*. at 999.

[17] *See Sav-A-Trip, Inc. v. Belfort*, 164 F.3d 1137, 1139 (8th Cir. 1999) (declining to extend the automatic stay to non-debtor employees of the debtor, but acknowledging that extension of an automatic stay to a debtor's co-defendant is proper in unusual circumstances); *Stephen Inv. Securities, Inc. v. Sec. & Exch. Comm'n*, 27 F.3d 339, 342 n. 5 (8th Cir. 1994); *Croyden Assocs. v. Alleco, Inc.*, 969 F.2d 675, 676 (8th Cir. 1992).

Here, the Court held that a lawsuit against the Improvement Districts would inevitably have an adverse impact on property of the bankruptcy estate, and that the Debtor had an identity of interest with the Improvement Districts. There was substantial evidence at trial to support that conclusion. For example, the representative from the buyer under the motion to sell, ERC Land Development, LLC, testified that the Improvement Districts held easements to obtain sewer services to the property, and that those easements were critical for the development, such that ERC would not buy the property without them.[18] And, Dana Kellerman, a representative of the Debtor, testified that the easements provided both the Debtor and the Bank with a "huge improvement to all the properties out there by bringing sewage to it."[19] Based on the evidence, the Court's finding that a lawsuit attacking the Improvement Districts would inevitably have an adverse impact on property of the estate is not clearly erroneous. Therefore, the Court did not abuse its discretion in denying the Motion for Relief from Stay. Based on that finding, we hold that the Court properly held that this case presents the type of "unusual circumstances" which justify the application of § 362(a)(3) to extend the automatic stay to a non-debtor.

b.       *Cause to Lift the Stay Based on Due Process and Procedural Claims*

Section 362(d)(1) and (2) of the Bankruptcy Code provides as follows:

(d)  On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –

---

[18]  *See Transcript of Hearing on Creditor's Motion for Relief from Stay of a Single Asset Real Estate and Response, Debtor's Motion for Authority to Sell Real Estate Free and Clear of Liens and Creditor's Objection and Amended Objection, Response to Motion for Authority to Sell, and Creditor's Motion for Relief from Stay Before the Honorable Audrey R. Evans, United States Bankruptcy Judge* (Doc. #226), Oct. 28, 2010, ("Transcript") at 61-62, 77.

[19]  *Transcript* at 145.

9

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; [or]

(2) with respect to a stay of an act against property under subsection (a) of this section, if –

(A) the debtor does not have [any] equity in such property; and

(B) such property is not necessary to an effective reorganization.[20]

As stated, the Court held that the Debtor does have equity in the property, so that the Bank is not entitled to relief under § 362(d)(2). That finding is not part of this appeal. However, the Bank contends that cause exists under § 362(d)(1) because the procedure by which the Improvement Districts were formed creates the risk that its due process rights might be violated in the future. To avoid that possibility, the Bank contends that, even if the Improvement Districts are protected by the automatic stay by virtue of § 362(a)(3), due process requires that it be given the opportunity to challenge their formation in a separate forum.

The Bank's argument is that, once formed, the Districts now have the authority to, in effect, prime the Bank's liens by borrowing funds for improvements and assessing the property owners to pay for such improvements. According to the Bank, now that the Improvement Districts are formed, the Districts can take those steps upon a vote of their Commissioners, without notice to the Bank or the opportunity to be heard in opposition. And, since the Commissioners are all representatives of the Debtor as well, the Bank argues that it should have the opportunity to request that the Districts be voided altogether, or reconstituted in a manner more protective of the Bank's interests as lienholder.

_____

[20] 11 U.S.C. § 362(d)(1) and (2).

10

The Fourteenth Amendment to the Constitution of the United States provides, in relevant part, that no State shall "deprive any person of life, liberty, or property, without due process of law."[21] And, the Constitution of the State of Arkansas provides that "[n]o person shall be . . . deprived of his life, liberty or property; except by the judgment of his peers, or the law of the land . . . ."[22]

The Bank relies on, *inter alia*, *Cypress Creek Farms v. L'Anguille Improvement District No. 1*,[23] in which the Arkansas Supreme Court, relying on the Fourteenth Amendment, held that where the hearing to establish an improvement district was the only opportunity to contest the necessity of inclusion of land in an improvement district, and where land included would be subject to having benefits or damages assessed, substantial property rights of the landowner were involved. Therefore, the landowner was entitled to notice and opportunity for a hearing appropriate to the nature of the case. As the Bank further points out, the United States Supreme Court has held that the holder of a mortgage possesses a substantial property interest that entitles such mortgagee to notice of actions affecting title to the property.[24] In addition, the Bank filed a Rule 28(j)[25] letter asking us to consider a recent Order entered by the Circuit Court of Benton County, Arkansas,[26] denying a motion to dismiss a suit in which the plaintiff mortgage holder contended that it had not been

---

[21] U.S. Const. amend. XIV, § 1. Similarly, the Fifth Amendment to the Constitution provides that "[n]o person shall . . . deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V.

[22] Ark. Const. Art. 2, § 21 (1874).

[23] 626 S.W.2d 357 (Ark. 1982).

[24] *Mennonite Bd. of Missions v. Adams*, 462 U.S.791, 103 S.Ct. 2706 (1983).

[25] Fed. R. App. P. 28(j)

[26] *Arvest Bank v. ABREHB, LLC, et al.,* Case No. CV-2010-3417-4 (Cir. Ct. Benton County Arkansas, Mar. 2, 2011).

given notice of the formation of a Municipal Improvement District. In denying the motion, the Court held that the Arkansas Municipal Property Owner's Improvement District Law[27] was unconstitutional because it could adversely affect the mortgage holder's interest without notice.

We need not decide here, however, whether actions of the Improvement Districts outside of bankruptcy might violate the Bank's due process rights. That is because the bankruptcy process adequately protects the Bank from any taking of its collateral. While the Improvement Districts are distinct entities, they have no practical or effective existence independent of the Debtor's real estate, and the treatment and disposition of that real estate is now subject to approval of the Bankruptcy Court. Since the Bank's collateral – the real estate – is an asset of the bankruptcy estate, the Improvement Districts are barred from placing any liens on that collateral unless they first obtain approval of the Bankruptcy Court.[28] Any Plan of Reorganization, or other action of the Debtor outside of the ordinary course of business, will necessarily be subject to the approval of the Bankruptcy Court, with notice to the Bank and the opportunity to be heard.[29] In other words, since the filing of the Debtor's bankruptcy case, the Improvement Districts are effectively barred from taking any action independent of the bankruptcy process. In the event the bankruptcy case were to fail, such that the Debtor was no longer obligated to adequately protect the Bank's property interest, the Bank could then argue in state court that the formation of the Districts violated its constitutional rights.

---

[27] Ark. Code Ann. § 14-94-101 to -128. Note that the Arkansas *Municipal* Property Owner's District Law was modified by the Arkansas legislature in 2009 to require notice to lienholders. *See* § 14-94-106(2)(B). The Arkansas Property Owner's District Law at issue here, §§ 14-93-101 to -133, was not similarly modified.

[28] *See, e.g.,* 11 U.S.C. § 363(b) and (p); Fed. R. Bankr. P. 4001(c) and 2002(a)(2).

[29] *See* 11 U.S.C. § 1129; Fed. R. Bankr. P. 2002(b).

12

But the Districts took no such actions prior to the bankruptcy filing and, due to such filing, any action affecting the Bank's rights can now only be taken with notice and the opportunity to be heard provided by the Bankruptcy Rules. In addition, as the Bankruptcy Court held, the Bank's rights are further protected by the equity cushion and the requirement that the Bank's liens will attach to any sale proceeds. As was implicit in the Bankruptcy Court's finding as to the equity cushion and protection of liens, these bankruptcy procedures are consistent with the Bank's due process rights in collecting the debt due it from the Debtor, and in protecting its collateral from other claims. As the Eighth Circuit has recognized, "adequate protection is a safeguard which is provided to protect the rights of secured creditors, throughout the proceedings, to the extent of the value of their property, and there is no constitutional claim of the creditor to more than that."[30] "By providing a creditor with a means of protecting its interest through section 362(d)'s adequate protection requirement, the competing interests of the debtor's need to reorganize and the secured creditor's entitlement to constitutional protection of its bargained-for property interests are reconciled."[31]

> The most important message of the Code with respect to the treatment of entities with an interest in property of the estate is that their remedies may be suspended, even abrogated, their right of recourse to collateral may be terminated as it is consumed in the business, but the value of their secured position as it existed at the commencement of the case is to be protected throughout the case when adequate protection is required.[32]

As a result, so long as the Debtor's property remains subject to the Bankruptcy Court's protection, the Bankruptcy Code requires that the Bank's property rights in

---

[30] *In re Briggs Transp. Co.*, 780 F.2d 1339, 1342 (8th Cir. 1985).

[31] *Id.*

[32] Karen M. Gebbia and Lawrence E. Oscar, *Saybrook Manufacturing: Is Cross-Collateralization Moot?*, 2 J. Bankr. L. & Prac. 163, 171 (May/June, 1993) (quoting 2 Collier on Bankruptcy pp. 361.01 at 361-367) (15th ed. 1992)).

its collateral be protected. And, the Bankruptcy Rules require that no action to adversely affect that property interest be taken without notice to the Bank and the opportunity to be heard. Hence, there is no basis to allow the Bank to act in a separate proceeding which the Bankruptcy Court properly found could damage the interests of the Debtor and other creditors in the reorganization process.[33]

Related to the due process argument, the Bank argues that the order of the Court denying its motion for relief was tantamount to an injunction and that, in order to obtain such relief, the Debtor should have complied with the requirements of Bankruptcy Rule 7065. The problem with this argument is that the Court did not issue an injunction. The Bank asked the Court for a comfort order, and the Court denied its request. Had the Debtor been asking the Court to enjoin the Bank from proceeding in state court against the Improvement Districts, the Bank's argument would be valid. But that is not the procedural posture of the case presented here. Therefore, since the Debtor was not seeking any affirmative relief from the Court, it was not required to offer evidence sufficient to entitle it to an injunction.

### c. Bad Faith and Laches

Because we conclude that the Bankruptcy Court did not err in denying the Fourth Motion for Relief on the grounds that an attack against the Improvement Districts would affect the Debtor's property under § 362(a)(3), and because the Bank's rights are protected by the Bankruptcy Code and Rules, we need not reach the issues relating to bad faith and laches.

---

[33] Since we hold that the bankruptcy process is consistent with the Bank's due process rights, we need not consider the Benton County Circuit Court case cited in the Bank's Rule 28(j) letter.

14

CONCLUSION

For the foregoing reasons, we conclude that the Bankruptcy Court did not err in denying the Fourth Motion for Relief from Stay filed by National Bank of Arkansas.  The Order doing so is, therefore, AFFIRMED.

_____